APPEAL NO. 24-1111

# United States Court of Appeals for the Third Circuit

FIRST CHOICE WOMEN'S RESOURCE CENTERS, INC.,

*Plaintiff-Appellant*,

v.

MATTHEW PLATKIN, in his official capacity as Attorney General of the State of New Jersey,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of New Jersey
Case No.: 3:23-cv-23076

## APPELLANT'S OPENING BRIEF


ERIN M. HAWLEY
LINCOLN DAVIS WILSON
TIMOTHY A. GARRISON
GABRIELLA M. MCINTYRE
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
(202) 393-8690
ehawley@ADFlegal.org
lwilson@ADFlegal.org
tgarrison@ADFlegal.org
gmcintyre@ADFlegal.org

*Counsel for Plaintiff-Appellant First Choice Women's Resource Centers, Inc.*

# CORPORATE DISCLOSURE STATEMENT

First Choice Women's Resource Centers, Inc., incorporated as a 501(c)(3) faith-based organization under the laws of New Jersey, is neither a subsidiary nor a parent company of any other corporation under the laws of the United States and no publicly traded corporation owns 10 percent or more of its stock.

# TABLE OF CONTENTS

Corporate Disclosure Statement ................................................................. i

Table of Authorities ........................................................................... iv

Introduction ................................................................................. 1

Statement of Jurisdiction ..................................................................... 3

Statement of the Issues ....................................................................... 4

Statement of Related Cases ................................................................... 4

Statement of the Case ........................................................................ 4

I.    Statement of facts ..................................................................... 4

    A.    First Choice has advocated a pro-life viewpoint and advanced a pro-life mission for nearly 40 years. .................... 4

    B.    Attorney General Platkin promotes abortion and opposes faith-based, pro-life pregnancy centers. .................... 5

    C.    Attorney General Platkin targets First Choice with a groundless and unreasonable subpoena. ............................. 10

II.   Procedural history. .................................................................. 12

Summary of Argument .......................................................................... 15

Standard of Review ........................................................................... 18

Argument ..................................................................................... 18

I.    The district court had subject matter jurisdiction. ........................... 18

    A.    First Choice's Claims Are Ripe. ............................................... 20

    B.    The district court's Catch-22 dismissal creates an impermissible preclusion trap. ............................................. 23

1.   The district court's dismissal conflicts with Supreme Court jurisprudence. .....................23

2.   This Court and three other circuits have rejected a state-litigation exhaustion requirement. .....................26

II.   First Choice is entitled to a temporary restraining order. ............32

A.   First Choice is likely to prevail on the merits. .....................33

1.   First Choice is likely to prevail on its selective enforcement claims. .....................34

2.   First Choice is likely to prevail on its Fourth Amendment claims. .....................40

B.   Irreparable harm to First Choice vastly outweighs delay for AG Platkin. .....................42

Conclusion.....................45

Certificate of Compliance .....................46

Certificate of Service .....................47

# TABLE OF AUTHORITIES

## Cases

*Americans for Prosperity Foundation v. Bonta*,
141 S. Ct. 2373 (2021) .................................................... 16, 22, 24, 25

*Baird v. Bonta*,
81 F.4th 1036 (9th Cir. 2023) ........................................................ 46

*Bennun v. Rutgers State University*,
941 F.2d 154 (3d Cir. 1991) ........................................................... 37

*Brown v. City of Pittsburgh*,
586 F.3d 263 (3d Cir. 2009) ..................................................... 36, 38

*Carlough v. Amchem Products, Inc.*,
10 F.3d 189 (3d Cir. 1993) ............................................................ 45

*Cerro Metal Products v. Marshall*,
620 F.2d 964 (3d Cir. 1980) .......................................................... 44

*Cohens v. Virginia*,
19 U.S. 264 (1821) ........................................................................ 20

*Colorado River Water Conservation District v. United States*,
424 U.S. 800 (1976) ...................................................................... 20

*Democratic Executive Committee of Florida v. Lee*,
915 F.3d 1312 (11th Cir. 2019) ..................................................... 46

*Donovan v. Lone Steer, Inc.*,
464 U.S. 408 (1984) ...................................................................... 42

*Elrod v. Burns*,
427 U.S. 347 (1976) ...................................................................... 44

*Esso Standard Oil Company v. Cotto*,
389 F.3d 212 (1st Cir. 2004) ......................................................... 19

*Exxon Mobil Corporation v. Saudi Basic Industrial Corporation*,
544 U.S. 280 (2005) ...................................................................... 27

*Federal Trade Commission v. American Tobacco Company,*
    264 U.S. 298 (1924) ....................................................... 41

*Frederick Douglass Foundation, Inc. v. District of Columbia,*
    82 F.4th 1122 (D.C. Cir. 2023) ...................................... 38

*Friedland v. Zickefoose,*
    538 F. App'x 122 (3d Cir. 2013) ..................................... 19

*General Protecht Group, Inc. v. Leviton Manufacturing Company,*
    651 F.3d 1355 (Fed. Cir. 2011) ...................................... 45

*Google, Inc. v. Hood,*
    822 F.3d 212 (5th Cir. 2016) .............................. 2, 13, 33

*Grode v. Mutual Fire, Marine & Inland Insurance Company,*
    8 F.3d 953 (3d Cir. 1993) ................................................ 45

*Hampton Hospital v. Bresan,*
    288 N.J. Super. 372 (App. Div. 1996) ........................... 39

*Heck v. Humphrey,*
    512 U.S. 477 (1994) ................................................. 19, 27

*Hill v. City of Scranton,*
    411 F.3d 118 (3d Cir. 2005) .................................... 37, 38

*Hohe v. Casey,*
    868 F.2d 69 (3rd Cir. 1989) ........................................... 21

*Hope v. Warden York County Prison,*
    972 F.3d 310 (3d Cir. 2020) ........................................... 35

*Houston v. Easton Area School District,*
    355 F. App'x 651 (3d Cir. 2009) ..................................... 37

*In re McVane,*
    44 F.3d 1127 (2d Cir. 1995) ........................................... 42

*In re Revel AC, Inc.,*
    802 F.3d 558 (3d Cir. 2015) ........................................... 35

*J.O. ex rel. C.O. v. Orange Township Board of Education,*
  287 F.3d 267 (3d Cir. 2002) ............................................. 34

*Karns v. Shanahan,*
  879 F.3d 504 (3d Cir. 2018) ............................................. 36

*Knick v. Township of Scott, Pennsylvania,*
  588 U.S. 180 (2019) ................................. 2, 17, 20, 26, 27

*Lexmark International, Inc. v. Static Control Components, Inc.,*
  134 S.Ct. 1377 (2014) .................................................... 16

*Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corporation,*
  5 F.3d 1508 (D.C. Cir. 1993) ......................................... 42

*Major League Baseball v. Crist,*
  331 F.3d 1177 (11th Cir. 2003) .................... 17, 28, 30, 31

*McGuire v. Reilly,*
  386 F.3d 45 (1st Cir. 2004) ............................................ 36

*Metropolitan Life Insurance Company v. Price,*
  501 F.3d 271 (3d Cir. 2007) ............................................ 19

*New Orleans Public Service, Inc. v. Council of City of New Orleans,*
  491 U.S. 350 (1989) ........................................................ 19

*Nordlinger v. Hahn,*
  505 U.S. 1 (1992) ............................................................ 36

*Obria Grp. Inc. v. Ferguson,*
  No. 3:23-cv-06093 (W.D. Wash. Nov. 29, 2023) ............... 2

*Online Merchants Guild v. Cameron,*
  995 F.3d 540 (6th Cir. 2021) ...................... 17, 28, 31, 32

*Peachlum v. City of York, Pennsylvania,*
  333 F.3d 429 (3d Cir. 2003) ............................................ 21

*PFLAG, Inc.* v. *Texas Attorney General*,
No. D-1-GN-24-001276 (Tex. Dist. Ct., Travis County Mar. 1, 2024)........................................................................................3

*Platkin v. Smith & Wesson Sales Company, Inc.*,
474 N.J. Super. 476 (App. Div. 2023) ......................................29, 31

*Real Alternatives, Inc. v. Secretary Department of Health & Human Services*,
867 F.3d 338 (3d Cir. 2017)............................................................37

*Robinson v. Lehman*,
771 F.2d 772 (3d Cir. 1985)............................................................34

*Roth v. Bank of the Commonwealth*,
583 F.2d 527 (6th Cir. 1978) ..........................................................45

*Second Amendment Foundation v. Ferguson*,
No. C23-1554 MJP, 2024 WL 97349 (W.D. Wash. Jan. 9, 2024) ....2

*Secretary of State of Maryland v. Joseph H. Munson Company*,
467 U.S. 947 (1984) .......................................................................16

*See v. City of Seattle*,
387 U.S. 541 (1967) .......................................................................41

*Singer Management Consultants, Inc. v. Milgram*,
650 F.3d 223 (3d Cir. 2011)............................................................35

*Smith & Wesson Brands v. Attorney General of New Jersey*,
27 F.4th 886 (3rd Cir. 2022).. 1, 12, 17, 21, 22, 23, 24, 28, 29, 30, 46

*Smith & Wesson Brands, Inc. v. Attorney General of New Jersey*,
No. 23-1223 (3d Cir., argued Nov. 15, 2023) .................................29

*Smith & Wesson Brands, Inc. v. Grewal*,
2022 WL 17959579 (D.N.J. Dec. 27, 2022)....................................29

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ..........................................................16, 20, 24

*Twitter, Inc. v. Paxton*,
    56 F.4th 1170 (9th Cir. 2022)...................................17, 21, 28, 33

*United States v. Westinghouse Electric Corporation*,
    788 F.2d 164 (3d Cir. 1986).............................................. 42

*Virginia v. American Booksellers Association, Inc.*,
    484 U.S. 383 (1988) ......................................................21

*Wayte v. United States*,
    470 U.S. 598 (1985) ......................................................36

*Willcox v. Consolidated Gas Company*,
    212 U.S. 19 (1909) .......................................................19

*Williamson County Regional Planning Commission v. Hamilton*
    *Bank of Johnson City*,
    473 U.S. 172 (1985) ......................................................26

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008) ........................................................35

*Woodlawn Cemetery v. Local 365, Cemetery Workers & Greens*
    *Attendants Union*,
    930 F.2d 154 (2d Cir. 1991)...........................................45

*Younger v. Harris*,
    401 U.S. 37 (1971) .......................................................29

## **Statutes**

28 U.S.C. § 1291................................................................3

28 U.S.C. § 1331................................................................3

42 U.S.C. § 1983...........................................................3, 19

N.J.S.A. § 56:8, New Jersey Consumer Fraud Act 7, 9, 10, 13, 24, 25, 39,
    42

## **Other Authorities**

Attorney General Matthew Platkin (@NewJerseyOAG), TWITTER
(April 26, 2022, 12:35 PM),
https://x.com/NewJerseyOAG/status/1518992190294351872 ......... 7

Attorney General Rob Bonta, State of California Office of the
Attorney General,
Open Letter from Attorneys General Regarding CPC
Misinformation and Harm (Oct. 23, 2023),
https://oag.ca.gov/system/files/attachments/press-
docs/Open%20Letter%20re%20Crisis%20Pregnancy%20Cente
rs%20FINAL.pdf ............................................................... 9

FDA Label, Mifepristone,
https://www.accessdata.fda.gov/drugsatfda_docs/label/2016/02
0687s020lbl.pdf ............................................................... 39

Fox 13 News Staff, Attorney General opens civil rights investigation
into Seattle Pacific University, SPU sues in return, FOX 13
SEATTLE (July 29, 2022),
https://www.fox13seattle.com/news/attorney-general-opens-
civil-rights-investigation-into-seattle-pacific-university ................. 3

https://1stchoice.org/ ................................................................. 38

https://firstchoicewomancenter.com/ ...................................... 38

https://www.plannedparenthood.org/ ...................................... 38

https://www.plannedparenthoodaction.org/ ............................. 38

Josh Sanburn, Houston's Pastors Outraged After City Subpoenas
Sermons Over Transgender Bill, TIME (Oct. 17, 2014),
https://time.com/3514166/houston-pastors-sermons-
subpoenaed/ ...................................................................... 3

Letter from Gabriel R. Neville, Legislative Counsel, New Jersey
State Legislative Office of Legislative Services, to Jay
Webber, Assemblyman, New Jersey General Assembly (Feb.
21, 2024),
http://media.aclj.org/pdf/I.O.-1551.pdf ................................ 1, 22, 37

Press Release, New Jersey Office of the Attorney General,
 Acting Attorney General Platkin Establishes "Reproductive
 Rights Strike Force" to Protect Access to Abortion Care for
 New Jerseyans and Residents of Other States (July 11, 2022),
 https://www.njoag.gov/acting-ag-platkin-establishes-
 reproductive-rights-strike-force-to-protect-access-to-abortion-
 care-for-new-jerseyans-and-residents-f-other-states/ ..................... 6

Press Release, The White House,
 Readout of Vice President Kamala Harris's Meeting with New
 Jersey State Legislators on Reproductive Rights (July 18,
 2022), https://www.whitehouse.gov/briefing-room/statements-
 releases/2022/07/18/readout-of-vice-president-kamala-harriss-
 meeting-with-new-jersey-state-legislators-on-reproductive-
 rights/ ................................................................................................... 7

ress Release, New Jersey Office of the Attorney General,
 Acting AG Platkin, U.S. Attorney Sellinger Establish State-
 Federal Partnership to Ensure Protection of Individuals
 Seeking Abortion and Security of Abortion Providers (July 20,
 2022), https://www.njoag.gov/acting-ag-platkin-u-s-attorney-
 sellinger-establish-state-federal-partnership-to-ensure-
 protection-of-individuals-seeking-abortion-and-security-of-
 abortion-providers/ ........................................................................... 6

# INTRODUCTION

This case asks whether a federal court can refuse to exercise jurisdiction over a 42 U.S.C. § 1983 challenge to a state investigatory demand simply because the demand has not been enforced by a state court. This Court has already answered that question, holding that "[f]ederal law authorizes just such a civil action," where the recipient of a subpoena "petitions a federal court to adjudicate its rights and obligations" rather than responding to the subpoena. *See Smith & Wesson Brands v. Attorney General of New Jersey*, 27 F.4th 886, 892-93 (3rd Cir. 2022). And that is the very action Plaintiff-Appellant First Choice brought against Attorney General Matthew Platkin, who issued broad investigative demands for confidential information about First Choice's donors, board members, employees, volunteers, and association with other like-minded entities, invoking a statute that does not and cannot constitutionally apply to First Choice.[1] But instead of adjudicating First Choice's speech and associational rights, the district court dismissed the case as unripe because the Subpoena had not yet been enforced in state court.

This violates both this Court's decision in *Smith & Wesson* and Supreme Court precedent. Section 1983 "guarantees a federal forum for

---

[1] *See* Ltr. from Gabriel R. Neville, Leg. Counsel, N.J. State Leg. Office of Leg. Servs., to Jay Webber, Assemblyman, N.J. Gen. Assembly (Feb. 21, 2024), http://media.aclj.org/pdf/I.O.-1551.pdf ("OLS Opinion").

claims of unconstitutional treatment at the hands of state officials" and does not require state-court exhaustion. *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019) (cleaned up). Yet the district court not only demanded that First Choice pursue its claims in state court but acknowledged that this meant it would likely *never* be able to pursue its claims in federal court. Under the district court's reading, a federal challenge to a state investigatory demand will "seldom if ever be ripe" because "res judicata principles will likely bar a plaintiff from filing a claim in federal court" after the state-court litigation. App.013 n.7. This "Catch-22" violates "the settled rule … that exhaustion of state remedies is not a prerequisite to an action under 42 U.S.C. § 1983" and erroneously "hand[s] authority over federal [constitutional] claims to state courts." *Knick*, 588 U.S. at 184–85, 189 (cleaned up).

The question presented here raises concerns for organizations and individuals across the full ideological spectrum. State officials have used investigatory powers to target the constitutional rights of major corporations, gun rights groups, pregnancy centers, Catholic immigrant shelters, LGBT advocates, and more. *See, e.g.*, *Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016); *Second Amend. Found. v. Ferguson*, No. C23-1554 MJP, 2024 WL 97349 (W.D. Wash. Jan. 9, 2024); *PFLAG, Inc.* v. *Texas Attorney General*, No. D-1-GN-24-001276 (Tex. Dist. Ct., Travis County Mar. 1, 2024); *Obria Grp. Inc. v. Ferguson*, No. 3:23-cv-06093

(W.D. Wash. Nov. 29, 2023).[2] Thankfully, for all these groups, Congress provided them an avenue for federal jurisdiction. The district court's *sua sponte* dismissal of First Choice's well-pleaded complaint erroneously denied it the federal forum guaranteed by 42 U.S.C. § 1983. This Court should reverse and direct the district court to enter the temporary restraining order it refused to consider.

## STATEMENT OF JURISDICTION

First Choice asserted federal jurisdiction under 28 U.S.C. § 1331 for its claims under 42 U.S.C. § 1983. The district court concluded the claims were unripe and dismissed sua sponte for lack of jurisdiction. Appellant First Choice Women's Resource Centers filed a timely notice of appeal on January 16, 2024. App.001-2. This Court has jurisdiction to review that dismissal under 28 U.S.C. § 1291.

---

[2] *See also* Suzanne Gamboa, *Catholic immigrant shelter battles Texas AG, who wants to shut it down*, NBC NEWS (Feb. 21, 2024), https://www. nbcnews.com/news/latino/catholic-migrant-shelter-battles-texas-paxton-rcna139809; Fox 13 News Staff, *Attorney General opens civil rights investigation into Seattle Pacific University, SPU sues in return*, FOX 13 SEATTLE (July 29, 2022),https://www.fox13seattle.com/news/attorney-general-opens-civil-rights-investigation-into-seattle-pacific-university; Josh Sanburn, *Houston's Pastors Outraged After City Subpoenas Sermons Over Transgender Bill*, TIME (Oct. 17, 2014), https://time.com/3514166/houston-pastors-sermons-subpoenaed/./

## STATEMENT OF THE ISSUES

1.      Whether a section 1983 suit to enjoin an unlawful investigatory demand by a state official is ripe only after a state court has enforced the demand.

2.      Whether First Choice is entitled to a temporary restraining order pending disposition of its motion for preliminary injunction.

## STATEMENT OF RELATED CASES

Supreme Court of the United States, *In re: First Choice Women's Resource Centers, Inc.*, No. 23-941 (filed Feb. 26, 2024).

Superior Court of New Jersey, Chancery Division, Essex County, No. ESX-C-22-24, *Platkin, et al. v. First Choice Women's Resource Centers, Inc.*, dispositive hearing set for May 20, 2024.

## STATEMENT OF THE CASE

### I.      Statement of facts

### A.      First Choice has advocated a pro-life viewpoint and advanced a pro-life mission for nearly 40 years.

AG Platkin has undertaken a campaign of hostility toward faith-based pro-life pregnancy centers that has culminated in the targeting of First Choice (and at least one other center in New Jersey) with a groundless, unduly burdensome, and purposefully harassing investigation because of its pro-life speech and mission. This investigation infringes on First Choice's First Amendment rights of free expression, free exercise, and free association, its Fourth Amendment

protection against unreasonable searches and seizures, and its Fourteenth Amendment guarantee of equal protection of the law. *See* D.C.Dkt. 1.

First Choice is a religious pro-life pregnancy resource center that serves women in unplanned pregnancies and their families by providing counseling, medical services, and practical support. D.C.Dkt. 1 ¶ 16. The Ministry began in 1985 and was incorporated in its present form as a religious nonprofit organization under the laws of New Jersey in 2007. *Id.* ¶¶ 17, 21. Providing its services for free, First Choice currently operates centers in Jersey City, Montclair, Morristown, Newark, and New Brunswick. *Id.* ¶ 18. It offers its services under the supervision of a licensed physician. *Id.* ¶ 20.

First Choice is open about its religious beliefs, which require it to protect and honor human life at all stages of development. On every page of its websites that advise to prospective clients, First Choice conspicuously states that it does not provide or refer for abortion. App.023-24 (ECF Dkt. 1 ¶¶ 22, 24, 30).

## B. Attorney General Platkin promotes abortion and opposes faith-based, pro-life pregnancy centers.

AG Platkin takes the opposite view. He has made clear that he supports abortion and opposes the work of pregnancy centers like First Choice. Upon taking office, he sought to establish his pro-abortion bona fides by establishing a "Reproductive Reproductive Rights Strike Force"

to "protect access to … abortion."[3] He also announced a partnership with the United States Attorney in New Jersey to "protect in- and out-of-state [abortion] patients, health care workers, and providers."[4] Together, the AG and the U.S. Attorney issued a press release boasting of "guidance" they had given to New Jersey prosecutors, instructing them on how to bring charges against anyone who interfered with abortion.[5]

AG Platkin has also allied himself closely with organizations like Planned Parenthood that perform abortions and share his expansive views on abortion policy. He has spoken alongside the CEO of Planned Parenthood of Metropolitan New Jersey at a roundtable hosted by Vice President Kamala Harris and other "advocates who are fighting on the

---

[3] Press Release, New Jersey Office of the Attorney General, Acting Attorney General Platkin Establishes "Reproductive Rights Strike Force" to Protect Access to Abortion Care for New Jerseyans and Residents of Other States (July 11, 2022), https://www.njoag.gov/acting-ag-platkin-establishes-reproductive-rights-strike-force-to-protect-access-to-abortion-care-for-new-jerseyans-and-residents-of-other-states/.

[4] Press Release, New Jersey Office of the Attorney General, Acting AG Platkin, U.S. Attorney Sellinger Establish State-Federal Partnership to Ensure Protection of Individuals Seeking Abortion and Security of Abortion Providers (July 20, 2022), https://www.njoag.gov/acting-ag-platkin-u-s-attorney-sellinger-establish-state-federal-partnership-to-ensure-protection-of-individuals-seeking-abortion-and-security-of-abortion-providers/.

[5] *Id.*

frontlines to protect reproductive rights,"[6] and he appeared at events hosted by the Planned Parenthood Action Fund of New Jersey.[7]

In keeping with his pro-abortion views, AG Platkin openly opposes faith-based pregnancy centers like First Choice, using his office to assert theories of liability against those pregnancy centers. Invoking his state consumer protection authority, he issued a "consumer alert" to warn of the dangers of "crisis pregnancy centers" or "CPCs." https://www.nj.gov/oag/newsreleases22/2022-1207_crisis-pregnancy-centers.pdf ("Consumer Alert"). Purporting to enforce the New Jersey Consumer Fraud Act, which concerns representations related to the "sale" of "merchandise," N.J.S.A. § 56:8-2, AG Platkin warned that pregnancy centers "try to convince pregnant people not to have abortions." *Id.*

AG Platkin's alert alleged—without support—that many CPCs "do not provide any health care at all" and "are not licensed medical facilities." *Id.* He also claimed that "CPC staff likely are not required to

---

[6] Press Release, The White House, Readout of Vice President Kamala Harris's Meeting with New Jersey State Legislators on Reproductive Rights (July 18, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/07/18/readout-of-vice-president-kamala-harriss-meeting-with-new-jersey-state-legislators-on-reproductive-rights/.

[7] Attorney General Matthew Platkin (@NewJerseyOAG), X (formerly known as Twitter) (April 26, 2022, 12:35 PM), https://x.com/NewJersey OAGNewJerseyOAG/status/1518992190294351872.

keep your health information private or follow medical ethics rules and standards of care," and that "CPCs may also provide false or misleading information about abortion." *Id.* Pressing further, he warned consumers that pregnancy centers may use words like "resource" and "choice" in their names (like First Choice Women's Resource Centers). And he cautioned that they may "[o]ffer free services"—heaven forbid—and have "examination rooms with medical equipment (like an ultrasound machine) and supplies." *Id.* (parenthetical in original).

Plus, in that consumer alert, AG Platkin recommends that women go to Planned Parenthood instead of pregnancy centers. *Id.* It's easy to see why—Planned Parenthood helped him write the alert. A public records request revealed that on October 17, 2022, AG Platkin's office forwarded a draft of the consumer alert to Kaitlyn Wojtowicz, Vice President of Public Affairs at Planned Parenthood Action Fund of New Jersey, and asked for her feedback. App.055. His office also sent similar requests to other pro-abortion groups. App.060, 064. Later, his office followed up to thank them all for their comments and inform them that they had been incorporated into the consumer alert. App.069-72. The abortion groups with which AG Platkin collaborated are similar in many respects to First Choice. They share the same clientele—i.e., women and men seeking reproductive health services—and many other services—e.g., pregnancy testing, STD testing, ultrasounds, adoption referrals, and so on. They also advertise their provision of these services

and collect client information. But, unlike First Choice, they share AG

Platkin's commitment to abortion.

Finally, in October 2023, AG Platkin joined fifteen other state

attorneys general in an open letter castigating pro-life pregnancy

centers.[8] He highlighted his status as one of the "legal officials charged

with enforcing our jurisdictions' consumer protection laws."[9] He

denigrated unnamed pregnancy centers for providing reproductive,

behavioral, and mental health care services such as ultrasounds,

pregnancy tests, and counseling, as well as providing material resources

like maternity and baby supplies—but not offering abortions.[10] And he

pledged to "continue to take numerous actions aiming to mitigate the

harmful effects" of pregnancy centers.[11]

---

[8] Attorney General Rob Bonta, State of California Office of the Attorney General, Open Letter from Attorneys General Regarding CPC Misinformation and Harm (Oct. 23, 2023), https://oag.ca.gov/system/files/attachments/press-docs/Open%20Letter%20re%20Crisis%20Pregnancy%20Centers%20FINAL.pdf.files/attachments/press-docs/Open%20Letter%20re%20Crisis%20Pregnancy%20Centers%20FINAL.pdf.

[9] *Id.* at 1.

[10] *Id.* at 1-3.

[11] *Id.* at 8.

### C. Attorney General Platkin targets First Choice with a groundless and unreasonable subpoena.

Less than a month after his letter against pregnancy centers, AG Platkin issued the Subpoena to First Choice under the NJCFA, the Charitable Registration and Investigation Act, and the Attorney General's investigative authority regarding professions and Occupations. App.086-108. Of course, First Choice is a religious nonprofit that provides free pregnancy services, but the NJCFA only covers representations related to the "sale" of "merchandise." N.J.S.A. § 56:8-2. In fact, when the New Jersey legislature proposed amending the NJCFA to cover pregnancy centers, the Office of Legislative Services found it would "likely be ruled unconstitutional."[12] The Subpoena cites no consumer complaint or other evidence of wrongdoing but demands that First Choice provide documents dating as far back as December 1, 2013, and extending to the present. App.096. It requires First Choice to disclose documents related to a broad host of topics, including First Choice's communications, internal procedures, and associations. App.095-99.

The scope of the materials called for by the Subpoena is exceptionally broad. It demands production of, among many other things, the following:

---

[12] *See supra* note 1.

a. A copy of every solicitation and advertisement, including those appearing on any FirstChoice website, social media, print media, including newspapers and magazines, Amazon or other e-commerce platform, sponsored content, digital advertising, video advertising, other websites, Pinterest, radio, podcasts, and pamphlets.

b. All documents from December 1, 2013, through the present, substantiating a broad host of statements made on First Choice's websites.

c. "All Documents physically or electronically provided to Clients and/or Donors, Including intake forms, questionnaires, and Pamphlets."

d. "All Documents Concerning representations made by [First Choice] to Clients about the confidentiality of Client information, Including privacy policies."

e. "All Documents Concerning any complaints or identifying any concerns from Clients or Donors about Your Services, Advertisements, Solicitations, Pamphlets, videos, or Your Claims, Including Your processes and procedures for handling complaints or concerns from Clients and Donors."

f. "Documents sufficient to Identify Personnel that You use or have used to provide any kind of ultrasound service."

g. "Documents sufficient to Identify to whom or where You refer Clients for Abortion Pill Reversal or other Services that require Professional Licensure, including the interpretation and findings of ultrasound images."

h. All documents concerning Heartbeat International, the Abortion Pill Reversal Network, and Care Net.

i. Documents sufficient to identify the identity of First Choice's owners, officers, directors (including medical directors), partners, shareholders, and board members; and

> j. "Documents sufficient to Identify donations made to First Choice."

App.095-100. AG Platkin "commanded" First Choice to produce these materials on or before December 15, 2023. To underscore his authority, he twice stated that "[f]ailure to comply with this Subpoena may render you liable for contempt of court and such other penalties as are provided by law." App.096.

## II. Procedural history.

Faced with the untenable choice of complying with AG Platkin's exorbitant demands or suffering judicial sanction, First Choice filed this action on December 13, 2023, along with a motion for a temporary restraining order and preliminary injunction to prevent AG Platkin from enforcing the Subpoena. D.C.Dkt. 1, 5, 6, 15. After two telephone conferences, the district court ordered the parties to meet and confer regarding a joint proposed briefing schedule for the TRO motion. D.C.Dkt. 15. AG Platkin agreed to suspend the Subpoena's return date until after the district court considered the preliminary injunction motion if First Choice agreed not to assert any rights in state court, but First Choice could not agree to abandon its constitutional claims in any forum. D.C.Dkt. 17. The parties then fully briefed their positions on the motion for TRO. D.C.Dkt. 24, 25. At no point did AG Platkin raise any objection to the district court's jurisdiction.

However, on January 12, 2024, the district court surprised the parties by sua sponte dismissing the Complaint for lack of subject-matter jurisdiction. App.012-13. It did so even though this Court had already recognized jurisdiction over such claims in *Smith & Wesson*. Ignoring First Choice's allegations that its speech and associations have been chilled, it found that First Choice suffered "no *current* consequence for resisting the subpoena" because "the same challenges" could be "raised in state court." App.010 (emphasis in original).

Following the Fifth Circuit's pre-*Knick* decision in *Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016), the district court held that a challenge to a "non-self-executing state-administrative subpoena" was not ripe because the relevant state statutes required AG Platkin to "file an enforcement action in state court seeking a judgment of a contempt against the recipient." App.008 (citing N.J. Stat. Ann. 56:8-6, 45:17A-33(g)). Thus, according to the district court, First Choice's claims could not ripen, and First Choice could not avail itself of federal jurisdiction until "the state court enforces the Subpoena." *Id.*

The district court imposed this extreme consequence of dismissal even though it acknowledged that doing so would likely prevent First Choice from ever being able to raise its constitutional claims in federal court. *See* App.013 n.7. Indeed, the court admitted that this rationale forced First Choice into a preclusion trap: that any constitutional harms visited upon the target of an investigation by an unlawful non-self-

executing state subpoena "may seldom if ever be ripe for adjudication in federal court." *Id.* "[I]f a plaintiff's claims in federal court are not ripe until after a state court has ruled on the enforceability of a subpoena," it held, "res judicata principles will likely bar a plaintiff from filing a claim in federal court pertaining to the state-court enforced subpoena." *Id.*

The district court's erroneous dismissal set off a series of events in this case and in state court. First Choice immediately filed its notice of appeal on January 16, App.001-2, and it asked the district court for an injunction pending that appeal, which was promptly denied for lack of jurisdiction. D.C.Dkt. 31, App.193. First Choice then filed with this Court an emergency motion to enjoin enforcement of the Subpoena pending appeal on January 23. 3d Cir. Dkt. 6. A panel of this Court denied that motion in an unreasoned order on February 15, "without prejudice to reconsideration by the merits panel and/or the filing of a request for an expedited briefing schedule." 3d Cir. Dkt. 20. But at the same time, AG Platkin commenced summary enforcement proceedings in state superior court with a request for an order to show cause on January 30, which the state court set for hearing for March 27. *See* Order, *Platkin v. First Choice Women's Resource Centers, Inc.*, No. CHA202449145 (N.J. Super. Ct. Feb. 16, 2024)). The state court hearing would thus take place before First Choice could obtain any relief from this Court.

Facing an ongoing state-court proceeding that could moot First Choice's constitutional claims, First Choice filed a Petition for a Writ of Mandamus or Certiorari before Judgment on February 26. It asked the U.S. Supreme Court to direct the district court to take jurisdiction and rule on First Choice's motion for a TRO and preliminary injunction. *In re First Choice Women's Resource Centers, Inc.*, No. 23-941 (U.S. Feb. 26, 2024). But immediately after First Choice filed the Petition, AG Platkin agreed to adjourn the March 27 state-court show-cause hearing by months to give the Supreme Court time to rule on the Petition. This once again made relief in this Court possible through an expedited appeal. So without delay, First Choice filed a motion to expedite its appeal on February 29. 3d Cir. Dkt. 24. But the same panel of this Court denied that request too. App.003.

AG Platkin filed his brief in opposition to First Choice's Supreme Court Petition on March 29. First Choice then responded to the state court's order to show cause and moved to stay, quash, or narrow the Subpoena. Finally, First Choice filed its Reply in support of its Supreme Court Petition on April 12.

## SUMMARY OF ARGUMENT

The district court erred in holding that federal courts are powerless to protect constitutional rights threatened by unlawful state investigations. Ignoring the chilling of First Choice's rights, it found that its federal challenges to state investigatory demands were not ripe

15

and dismissed the action for lack of jurisdiction until "the state court enforces the Subpoena." App.011. This is reversible error for two reasons.

First, First Choice has an indisputable right to a federal forum. The district court failed to meet its "virtually unflagging" obligation to exercise its jurisdiction over First Choice's § 1983 constitutional claims. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014)). These claims are unquestionably ripe because the compelled disclosure of records about donors, employees, board members, volunteers, and associations with like-minded entities under pain of penalty chills First Choice's constitutionally protected speech, free exercise, and associational rights *now*—even prior to enforcement. *See Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373, 2378 (2021) (finding "compelled disclosure" of sensitive internal information "'creates an unnecessary risk of chilling' in violation of the First Amendment.") (quotation omitted).

Second, the district court created an impermissible preclusion trap by applying a state court exhaustion rule to First Choice's § 1983 claims. The court relied on the Fifth Circuit's pre-*Knick* holding in *Google* that challenges to non-self-executing state administrative subpoenas are not ripe prior to enforcement. App.010. But the district court recognized that, as a result of its ruling, res judicata principles

made it likely that First Choice would *never* get to raise its claims in federal court—an outcome that the Supreme Court and four other circuits, including this one, have stated is inimical to "the settled rule … that exhaustion of state remedies is not a prerequisite" to a § 1983 action. *Knick*, 588 U.S. at 185 (cleaned up); *see also, e.g.*, *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1178 n.3 (9th Cir. 2022); *Smith & Wesson*, 27 F.4th at 890–93; *Online Merchants Guild v. Cameron*, 995 F.3d 540, 550–52 (6th Cir. 2021); *Major League Baseball v. Crist*, 331 F.3d 1177, 1180–81 (11th Cir. 2003). The district court ignored this Court's decision in *Smith & Wesson* and followed the wrong side of the circuit split on this issue. This Court should correct that error.

Along with directing the district court to take jurisdiction, this Court should order the district court to enter a TRO to prevent AG Platkin from enforcing the Subpoena in state court while the district court evaluates whether to issue a preliminary injunction. AG Platkin has impermissibly targeted First Choice. He has been forthright about his animosity toward pregnancy care centers and their pro-life work. This has resulted in the Attorney General selectively enforcing New Jersey law against First Choice while soliciting policy advice from similarly situated abortion advocacy groups, such as Planned Parenthood, whose ideology he favors over that of First Choice. AG Platkin does not meaningfully dispute that First Choice is irreparably harmed by the loss of its constitutionally protected freedoms. This

Court should therefore reverse the district court's ruling dismissing this case and denying First Choice a TRO.

## STANDARD OF REVIEW

This court reviews a district court's ruling that it lacks subject matter jurisdiction de novo. *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007). And while the denial of a temporary restraining order is ordinarily reviewed for abuse of discretion, *Friedland v. Zickefoose*, 538 F. App'x 122, 123 (3d Cir. 2013), the Court's review here is de novo because the district court declined to decide that question based on a purported lack of jurisdiction. *Esso Standard Oil Co. v. Cotto*, 389 F.3d 212, 217 (1st Cir. 2004).

## ARGUMENT

### I.  The district court had subject matter jurisdiction.

The district court erred by failing to exercise its congressionally conferred jurisdiction over First Choice's constitutional claims. It is well settled that "[t]he right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) (quoting *Willcox v. Consolidated Gas Co.*, 212 U.S. 19, 40 (1909)). Indeed, Congress guaranteed "a federal forum for claims of unconstitutional treatment at the hands of state officials." *Heck v. Humphrey*, 512 U.S. 477, 480 (1994). But instead of upholding First Choice's right to adjudicate its constitutional claims under section 1983

in federal court, the district court dismissed them sua sponte as unripe until the Subpoena is enforced in state court.

This violates longstanding law. As Chief Justice Marshall said long ago, the federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. 264, 404 (1821). Thus, their obligation "to hear and decide cases within [their] jurisdiction" is "virtually unflagging." *SBA List*, 573 U.S. at 167. As with "any other constitutional claim," First Choice was "guaranteed a federal forum under § 1983" for its challenge to AG Platkin's investigatory action. *Knick*, 588 U.S. at 189.

By dismissing First Choice's federal claims and relegating it to a state forum, the district court failed to exercise its "unflagging" jurisdictional obligation. *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976). The lower court first held that First Choice's section 1983 claim will ripen only *after* the state court has enforced the subpoena. The court did this while acknowledging the preclusion trap its holding created: to find that a claim against a state subpoena is not ripe until enforced in state court means that "res judicata principles will likely bar a plaintiff from [ever] filing a claim in federal court." App.013 n.7. That is not the law. The district court's per se exhaustion requirement for claims challenging state investigatory demands is inconsistent with § 1983's guarantees and this Court's

ripeness jurisprudence. It is also inconsistent with the majority of circuits, including this one, to consider the question.

## A. First Choice's Claims Are Ripe.

First Choice's claims are ripe under Article III. "Federal law authorizes just such a civil action" where a recipient of a subpoena "petitions a federal court to adjudicate its rights and obligations" rather than complying with the demand to produce. *See Smith & Wesson*, 27 F.4th at 892–93. And "[a] First Amendment claim, particularly a facial challenge, is subject to a relaxed ripeness standard." *Peachlum v. City of York, Pennsylvania*, 333 F.3d 429, 434 (3d Cir. 2003). Thus, a constitutional challenge to an attorney general's investigative demand is ripe "even prior to … enforcement" if the plaintiff alleges "objectively reasonable chilling of its speech or another legally cognizable harm." *Twitter*, 56 F.4th at 1178 n.3.

First Choice made that showing. The Subpoena's unlawful investigation of First Choice's protected pro-life speech has "a chilling effect on free expression." *Hohe v. Casey*, 868 F.2d 69, 73 (3rd Cir. 1989) (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965)). In the First Amendment context, this "chilling effect on speech can itself be the harm" satisfying ripeness. *Twitter*, 56 F.4th at 1178.. As the Supreme Court has recognized, this harm of self-censorship "can be realized even without an actual prosecution." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393, (1988)

First Choice proffered sworn statements detailing how AG Platkin's Subpoena chills its constitutionally protected speech, religion, and associational rights. D.C.Dkt. 1 at ¶¶ 71–79. AG Platkin seeks "compelled disclosure" of ten years' worth of records about donors, employees, board members, volunteers, and associations with like-minded entities which—if disclosed—would make an ordinary person "think[] twice before speaking" about, associating with, or donating to groups like First Choice. *See Americans for Prosperity Found.*, 141 S. Ct. at 2382; *Smith & Wesson*, 27 F.4th at 896–97 (Matey, J., concurring). "One might suspect that is the whole point" in serving the Subpoena. *Id.*(Matey, J., concurring). Indeed, "[i]t is a well-traveled road in the Garden State, where long-dormant regulatory powers suddenly spring forth to address circumstances that have not changed." *Id.*

It is especially troubling that AG Platkin has acted against First Choice without any underlying complaint or evidence of wrongdoing. He suggests that, because other attorneys general have taken actions in their jurisdictions against pro-life pregnancy centers for purportedly "misleading donors and potential clients … into believing that they provide … abortion care," D.C.Dkt. 24 at 6, then his fishing expedition is warranted. It's not. Those government officials, like AG Platkin, are motivated by their desire to ensure "access to the full spectrum of

reproductive healthcare, including abortion."[13] Thus, their actions are as tainted by impermissible viewpoint hostility as AG Platkin's. If anything, AG Platkin's open hostility to pregnancy centers' activities and his promise to "take numerous actions" against pregnancy centers, *id.*, compounds the present chilling effect his Subpoena has upon First Choice's speech, religious exercise, and associations.

The district court's rule that a challenge to a state investigative demand can *never* be ripe before enforcement ignores this present harm. It held the case unripe because First Choice has not yet been compelled by a state court to disclose sensitive, constitutionally protected information. But the harms to First Choice's speech and associational interests are present and ongoing, and the risk of further chilling its First Amendment rights "is enough [to establish ripeness], because First Amendment freedoms need breathing space to survive." *Americans for Prosperity Found.*, 141 S. Ct. at 23849 (cleaned up). "When it comes to a person's beliefs and associations, broad and sweeping state inquiries into these protected areas discourage citizens from exercising rights protected by the Constitution." *Id.* at 2384 (cleaned up). The Subpoena need not be enforced to serve its goal to chill disfavored speech; that's its very point. *Smith & Wesson*, 27 F.4th at 896–97 (Matey, J., concurring).

---

[13] Open Letter from Attorneys General, supra n. 1.

Plus, AG Platkin has followed through with his "immediate" plans to enforce the Subpoena against First Choice, placing the ripeness of this case beyond dispute. D.C.Dkt. 24 at 14. But even without this follow-through, First Choice faces considerable penalties under New Jersey law for failing to comply with the subpoena—penalties that could cripple its operations and severely impair its mission. These include contempt, freezing First Choice's operations, "[v]acating, annulling, or suspending [its] corporate charter," or any other relief necessary "until [First Choice] ... obeys the subpoena." N.J. Stat. Ann. 56:8-6(c)–()-(d) .). The "combination" of threatened administrative action with crippling sanctions "suffice[d] to create an Article III injury" in *SBA List*, 573 U.S. at 166. So too here. And present chilling and a risk of future chilled protected speech and associations similarly established ripeness in *Americans for Prosperity Found.*, 141 S. Ct. at 2384. Again, so too here. First Choice's constitutional claims are ripe.

**B.    The district court's Catch-22 dismissal creates an impermissible preclusion trap.**

**1.    The district court's dismissal conflicts with Supreme Court jurisprudence.**

The district court ignored entirely First Choice's allegations that its speech and associations have been chilled and reasoned instead that First Choice suffered "no *current* consequence for resisting the subpoena" because "the same challenges" could be "raised in state

court." App.011-12 (emphasis in original). Based on that flawed reasoning, the court below held that a challenge to a "non-self-executing state-administrative subpoena" was per se not ripe because the relevant state statutes required AG Platkin to "file an enforcement action in state court seeking a judgment of a contempt against the recipient." *Id.* at 5 (citing N.J. Stat. Ann. 56:8-6, 45:17A- 33(g)). Indeed, the court determined that First Choice could not avail itself of federal jurisdiction until "the state court enforces the Subpoena." *Id.* This was so even though such a rule would likely prevent First Choice from ever being able to raise its constitutional claims in federal court. *See* App.013 n.7. That conclusion is incompatible with the Supreme Court's "settled rule" in *Knick* "that exhaustion of state remedies is not a prerequisite to" a § 1983 action, *Knick*, 588 U.S. at 185 (cleaned up), because it creates the same "Catch-22" that the Supreme Court repudiated in that case. See infra Sec. B.2.

In *Knick*, the Supreme Court overruled *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), a case that required property owners first to litigate "just compensation" under the Takings Clause in state court before filing a federal action. 588 U.S. at 184-85. Under *Williamson County*, a Fifth Amendment plaintiff could not bring a claim in federal court until a state court had denied his claim under state law. *Id.* And because a state court's resolution of a federal claim generally has a preclusive

effect in federal court, "the takings plaintiff thus finds himself in a Catch-22." *Id.* Such a plaintiff "cannot go to federal court without going to state court first; but if he goes to state court and loses, his claim will be barred in federal court. The federal claim dies aborning." *Id.*

In *Knick*, the Supreme Court noted that this "preclusion trap should tip [the Court] off that the state-litigation requirement rests on a mistaken view of the Fifth Amendment." *Id.* In fact, as the *Knick* Court explained, section 1983 guarantees "a federal forum for claims of unconstitutional treatment at the hands of state officials." *Id.* (quoting *Heck*, 512 U.S. at 480. But that "guarantee of a federal forum rings hollow" if those so injured "are forced to litigate their claims in state court." *Knick*, 588 U.S. at 185.

The same is true here. First Choice is entitled to bring its section 1983 claims in federal court. That provision has long guaranteed "a federal forum" for claims of unconstitutional treatment at the hands of state officials." *Heck*, 512 U.S. at 480. But the Catch-22 recognized by the district court forces parties to first litigate their claims in state court, and then res judicata prevents them from ever filing in federal court. This "preclusion trap" should have made clear to the lower court that its exhaustion requirement was "mistaken." *Knick*, 588 U.S. at 185.

The district court's exhaustion rule would not only preclude First Choice's claims on the merits, but would also strip the district courts of

jurisdiction to decide them. The Rooker-Feldman doctrine prevents a party from relitigating matters already considered and decided by state courts of competent jurisdiction. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 281, 284 (2005) (stating that federal district courts lack jurisdiction over suits by "state-court losers" who "invit[e] district court review and rejection of state court judgments"). But the district court required First Choice to bring suit in federal court only after the investigatory subpoena is held enforceable by a state court. As a "state-court loser," First Choice's federal claims would be barred by Rooker-Feldman, even though First Choice filed suit in federal court first. That can't be right either. The district court's decision cannot be squared with Supreme Court precedent.

### 2. This Court and three other circuits have rejected a state-litigation exhaustion requirement.

The district court's adoption of the Fifth Circuit's state exhaustion rule has been expressly rejected by not only this Court, but also the Sixth, Ninth, and Eleventh Circuits. These circuits agree that state-court enforcement is not a prerequisite to federal jurisdiction where the plaintiff alleges chilling of First Amendment rights or other cognizable harm. *See Twitter*, 56 F.4th at 1178 n.3; *Smith & Wesson*, 27 F.4th at 890–93; *Online Merchants Guild*, 995 F.3d at 550–52; *Major League Baseball*, 331 F.3d at 1180–81. In other words, these circuits follow the

ordinary ripeness rules even when a state investigatory demand is at issue.

This case is on all fours with *Smith & Wesson*. There, this Court held that federal courts had jurisdiction over a challenge to an indistinguishable investigatory subpoena issued by none other than AG Platkin. 27 F.4th at 890. As here, AG Platkin responded to Smith & Wesson's federal challenge by filing a competing enforcement action in state court. *Platkin v. Smith & Wesson Sales Co., Inc.*, 474 N.J. Super. 476, 481 (App. Div. 2023). Smith & Wesson requested that the state court defer under the "first filed" rule, but it declined. *Id.* at 489. The state court reached judgment first, rejected the plaintiff's federal constitutional defenses, and enforced the subpoena. *Id.* Notwithstanding that the gun manufacturer had first filed in federal court, the district court then abstained under *Younger v. Harris*, 401 U.S. 37 (1971).

This Court reversed, holding that "[f]ederal law authorizes" a section 1983 action challenging an unlawful state subpoena. *Smith & Wesson*, 27 F.4th at 892–93. Unfortunately, the state court beat this Court to the punch and enforced the subpoena. So on remand, the district court held that Smith & Wesson couldn't raise its federal claims after all—they were barred under res judicata principles. *Smith & Wesson Brands, Inc. v. Grewal*, 2022 WL 17959579, at *5 (D.N.J. Dec. 27, 2022). That appeal is currently before this Court. *See Smith &*

*Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, No. 23-1223 (3d Cir., argued Nov. 15, 2023).

The district court here distinguished *Smith & Wesson* on the ground that it involved abstention, not subject matter jurisdiction. App.013. But this is a distinction without a difference. Not only did this Court in *Smith & Wesson* expressly hold that these challenges could be filed before the Subpoena was enforced, 27 F.4th at 892-93, but by rejecting the district court's abstention there, this Court necessarily affirmed the "jurisdiction" that the district court had over Smith & Wesson's federal claims. *Id.* at 890 & n.1.

This jurisdiction is necessary to prevent the very chilling injury— "fearing the arrival of subpoenas" and "thinking twice before speaking" —that First Choice faces here. *See id.* at 896–97 (Matey, J., concurring). These aggressive investigative demands are not novel in New Jersey: the use of state power to silence speech "is a well-traveled road in the Garden State, where long-dormant regulatory powers suddenly spring forth to address circumstances that have not changed" while the state ignores "concerns about the protections of the First…Amendment rights of New Jersey residents." *Id.* at 896 (Matey, J., concurring). AG Platkin is aware of his Subpoena's present chilling effect on First Choice. "One might suspect that is the whole point" of serving the Subpoena in the first place. *Id.*

Consider also the Eleventh Circuit's precedent. A similar investigatory investigatory action occurred in *Major League Baseball v. Crist*, where the Florida attorney general served broad antitrust civil investigative demands concerning Major League Baseball's plans to eliminate Florida-based teams. 331 F.3d 1177, 1179 (11th Cir. 2003). MLB lodged a pre-enforcement challenge in federal court. *Id.* at 1181. The Eleventh Circuit held that pre-enforcement challenges to investigatory demands must be available. Where the only apparent options under state law were to "comply with the terms of the CIDs" at great expense or bring a "suit in state court" that the state court had previously declined to hear, "an action in federal court" under section 1983 was the only realistic avenue for relief. *Id.*, 331 F.3d at 1180–81. The same is true here. The supposed options of complying with the Subpoena demanding sensitive internal information or litigating in a state court that has previously refused to entertain similar federal objections do not extinguish First Choice's right to litigate in federal court. *See Smith & Wesson*, 474 N.J. Super. at 496, 498.

The Sixth Circuit has also affirmed federal jurisdiction over a constitutional pre-enforcement challenge to an investigatory demand. In *Online Merchants Guild*, a trade organization challenged the Kentucky attorney general's investigation of sellers of COVID mitigation supplies under state price-gouging laws. 995 F.3d at 546. The Sixth Circuit held that a CID recipient showed a "threat of prosecution" that established

"injury in fact." *Id.* at 552. In particular, jurisdiction existed over claims challenging the civil investigative demand based on "evidence of past enforcement actions," the statutory availability of private actions to enforce the law, and the attorney general's significant public posturing regarding price gouging. *Id.* at 550–51. Indeed, the attorney general "vigorously litigated enforcement of the … subpoena and CID in state court," and he "engaged in significant posturing regarding his price-gouging investigations in public comments." *Id.* at 551. The attorney general's "public comments and appearances" undermined his attempt "to minimize the subpoenas and CIDs as preliminary, investigatory actions unlikely to lead to enforcement." *Id.* at 552.

Similarly here, AG Platkin has already enforced similar investigative demands against Smith & Wesson, with similar results, and has already sought enforcement of the Subpoena in state court. He also takes pains in his press releases, public appearances, and social media posts to demonstrate his affinity for abortion and his contempt for laws that regulate abortion and the courts that uphold them. D.C.Dkt. 1 at ¶¶ 33–63. In contrast, he has treated pro-life pregnancy centers like First Choice with open hostility, disparaging them for allegedly "pretend[ing] to be legitimate medical facilities"[14] and directing consumers to abortion

---

[14] Attorney General Matt Platkin (@NewJerseyOAG), TWITTER (December 7, 2022, 3:20 PM), https://x.com/NewJerseyOAG/status/1600585960265228288.

facilities like Planned Parenthood—facilities that he leaned on to help him craft his Consumer Alert. Far from a "preliminary action[] unlikely to lead to enforcement," AG Platkin's Subpoena is an important tool in his agenda to silence his opposition.

The Ninth Circuit also expressly rejected the Fifth Circuit's view that a civil investigative demand could not cause injury until it was enforced. *Twitter*, 56 F.4th at 1178 n.3 (citing *Google*, 822 F.3d at 225). In *Twitter*, the court held that a constitutional challenge to an attorney general's demand is ripe "even prior to the CID's enforcement" if the plaintiff alleges "objectively reasonable chilling of its speech or another legally cognizable harm." *Id.* Though it ultimately found Twitter failed to adequately allege chill, it concluded that the Fifth Circuit misconstrued case law regarding federal administrative subpoenas and ignored that under "the First Amendment … a chilling effect on speech *can itself be the harm.*" *Id.* at 1178–79 (emphasis added). First Choice *has* sufficiently alleged existing harm to its speech, religion, and associational rights. *See supra* Sec. X.

In short, the district court's per se rule that federal challenges to pre-enforcement investigative demands are not ripe until enforced by a state court is wrong under both Supreme Court and these circuits' precedents. It is no answer to say that First Choice can obtain review of the state court proceedings by the Supreme Court. If the district court's holding stands, First Choice can obtain such federal review only if it can

resist producing documents through multiple stages of state proceedings and then obtain discretionary review from the Supreme Court. These unlikely eventualities make clear that the district court's ruling is a roadmap to prevent federal recourse for disfavored entities served broad, unlawful investigatory subpoenas that chill their First Amendment activities.

For the reasons set forth above, this Court should reverse the district court's sua sponte order dismissing the case and hold that it was obligated to exercise subject matter jurisdiction over First Choice's constitutional claims.

## II. First Choice is entitled to a temporary restraining order.

This Court should also reverse the district court's denial of a TRO restraining AG Platkin from enforcing the Subpoena until that court decides whether to issue a preliminary injunction. The district court improperly denied this relief when it held that it lacked jurisdiction over First Choice's constitutional claims. D.C.Dkt. 28 at 11. And the denial of a TRO is appealable when, as here, "its denial decides the merits of the case or is equivalent to a dismissal of the claim." *Robinson v. Lehman*, 771 F.2d 772, 782 (3d Cir. 1985). "A temporary restraining order is a stay put equitable remedy that has as its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation." *J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 273 (3d Cir. 2002) (cleaned up). First Choice was

entitled to that relief to prevent AG Platkin from enforcing his Subpoena in state court and imposing the preclusion trap forecast by the district court. This Court should grant a TRO now to preserve First Choice's right to a federal forum.

The requirements for imposing a temporary restraining order are the same as those for a preliminary injunction. *See Hope v. Warden York Cty. Prison*, 972 F.3d 310, 319 (3d Cir. 2020). In general, a movant must show "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, if irreparable harm to the movant so "decidedly outweighs any potential harm" to the opposing party, the Court need only find "serious questions going to the merits" to grant an injunction. *In re Revel AC, Inc.*, 802 F.3d 558, 570 (3d Cir. 2015) (quotation omitted). First Choice met both standards here and was entitled to a TRO.

## A.    First Choice is likely to prevail on the merits.

Regarding the first *Winter* factor, a movant "needs only to show a *likelihood* of success on the merits (that is, a reasonable chance, or probability, of winning) to be granted relief. A 'likelihood' does not mean more likely than not." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (italics and parenthetical in original).

In its motion for a temporary restraining order and preliminary injunction, First Choice demonstrated several bases for success on its constitutional claims, setting forth how enforcement of AG Platkin's subpoena would violate its First Amendment rights to free speech, religious exercise, and association, and its Fourth Amendment protection against unreasonable searches and seizures. D.C.Dkt. 5 at 15–31. It highlightes two for purposes of this appeal: its claims of selective enforcement based on viewpoint discrimination, and its Fourth Amendment challenge. It is likely to pevail on both.

### 1. First Choice is likely to prevail on its selective enforcement claims.

"[P]rosecutorial discretion … is not unfettered." *Wayte v. United States*, 470 U.S. 598, 608 (1985) (cleaned up). To establish either a First Amendment viewpoint discrimination claim or a Fourteenth Amendment selective enforcement claim, "a plaintiff must demonstrate that he was (1) treated differently from other, similarly situated persons and (2) "that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor or to prevent the exercise of a fundamental right." *Karns v. Shanahan*, 879 F.3d 504 (3d Cir. 2018). Viewpoint discrimination occurs where the government enforces the law against persons of one viewpoint while not enforcing the law against similarly situated persons of the opposing viewpoint. *McGuire v. Reilly*, 386 F.3d 45, 62 (1st Cir. 2004). Thus, First Choice

must show that it was singled out for enforcement from "other similarly situated individuals," and "that such enforcement occurred because of the viewpoint expressed." *Brown v. City of Pittsburgh*, 586 F.3d 263, 293 (3d Cir. 2009). First Choice easily meets both requirements.

*Similarly situated.* Persons or groups are similarly situated when they are alike "in all relevant respects." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). "[S]imilarly situated," however, does not mean "identically situated." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 178 (3d Cir. 1991), abrogated on other grounds by *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-16 (1993); *Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 655 (3d Cir. 2009) (same).

Here, it is easy to see a substantially similar organization with different speech: Planned Parenthood. Indeed, while targeting First Choice, AG Platkin overlooks not just Planned Parenthood but dozens of other reproductive-health-related organizations. The similarities these organizations share with First Choice include clientele—*i.e.*, people seeking reproductive health services—and services—e.g., pregnancy testing, STD testing, ultrasounds, and adoption referrals. Indeed, the similarity of the two entities is demonstrated by AG Platkin's own consumer alert, which specifically recommends that women visit Planned Parenthood *instead of* pregnancy care centers like First Choice. (Consumer Alert). Thus, AG Platkin treats similarly situated groups differently solely because they speak different messages on abortion.

*See Hill v. City of Scranton*, 411 F.3d 118,  125 (3d Cir. 2005) (internal quotation omitted); *Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.*, 867 F.3d 338, 348 (3d Cir. 2017).

*Unlawful discrimination based on viewpoint*. Through his selective enforcement of New Jersey law, AG Platkin has discriminated on the basis of viewpoint and prevented the exercise of First Choice's First Amendment rights. "[G]overnment favoritism in public debate is so pernicious to liberty and democratic decisionmaking that viewpoint discrimination will almost always be rendered unconstitutional." *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1141 (D.C. Cir. 2023) (quotation omitted). Discriminatory intent may be demonstrated through either a pattern of discriminatory enforcement or direct evidence of animus. *Brown*, 586 F.3d at 293–94 & n.37; *Hill*, 411 F.3d at 131–32.

That Attorney General Platkin has singled out pregnancy care centers for invasive investigator demands evinces an intent to discriminate based on First Choice's viewpoint. *See Brown*, 586 F.3d 263, 293–94 & n.37. In addition, AG Platkin's hostility towards pro-life pregnancy centers is a central feature of his political persona. App.019. He has a record of selectively targeting for enforcement pregnancy centers that hold views on abortion with which he disagrees. *Id*. ¶ 66. Because pregnancy centers like First Choice don't promote abortion and abortion facilities like Planned Parenthood do, AG Platkin solicits help from the

latter while imposing unfounded and overbroad investigative demands on the former. AG Platkin has even worked with Planned Parenthood to draft its "consumer alert" targeting pregnancy centers like First Choice. App.054.

AG Platkin's weak justification for initiating his investigation against First Choice and the sheer breadth of his demands further illustrate his discriminatory intent. He has identified no consumer complaint nor any suspected wrongdoing on the part of First Choice. Instead, AG Platkin purports to be concerned with representations related to the "sale" of "merchandise." N.J.S.A. § 56:8-2. But he fails to explain how that possibly applies to a nonprofit's provision of *free* pregnancy services. *See Hampton Hosp. v. Bresan*, 288 N.J. Super. 372, 383 (App. Div. 1996). That the NJCFA does not cover organizations like First Choice is clear from the fact that this year, the New Jersey legislature entertained a bill to amend the NJCFA to cover pregnancy centers.[15] Not only that, but New Jersey's own office of legislative services issued an opinion that any such bill, if passed, would "likely be ruled unconstitutional" under the First Amendment. *Id*. AG Platkin's invocation of a statute that does not and cannot constitutionally apply to First Choice only underscores the invidious purposes of his Subpoena.

---

[15] *See supra* note 1.

AG Platkin defended his investigation on the grounds that First Choice "maintains multiple websites for different target audiences, representing [its] mission and work in dramatically different ways." 3d Cir. Dkt. 14 at 4. This only further emphasizes his improper viewpoint discrimination. For one thing, First Choice is unmistakably clear about its pro-life position on both its supporter and client websites, which state on every page that the group does not provide abortions. *See* https://firstchoicewomancenter.com/ and https://1stchoice.org/. Equally important, if creating "multiple websites for different target audiences" is problematic, Planned Parenthood does the same thing. *Compare* https://www.plannedparenthoodaction.org/ (urging donors to help "reform the federal courts" to support abortion rights), *with* https://www.plannedparenthood.org/ (focusing on services in a website directed to clients).

AG Platkin has also said he is concerned that First Choice is making misleading claims about medical information. 3d Cir. Dkt. 14 at 5. But the statements he objects to are drawn *directly* from mifepristone's FDA label. "For example," he said "[First Choice] claims that "'[b]ecause of the risk of serious complications, the abortion pill is available through a restricted program.'" But the FDA label for mifepristone says in three separate places that the abortion drug "is only available through a restricted program called the MIFEPREX REMS Program." https://www.accessdata.fda.gov/drugsatfda_docs/label/2016/020687s020l

bl.pdf ("FDA Label") at 1, 13, 14. Likewise, AG Platkin says he needs to investigate because First Choice that the abortion drug can lead to "sepsis" and "rupturing of the uterus." But the FDA label repeatedly expressly and repeatedly warns that the abortion drug can lead to sepsis, *id.* at 1, 2, 5, 6, 8, and uterine rupture, *id.* at 4, 8. On the flip side, AG Platkin disregards dangerously misleading statements by Planned Parenthood regarding the safety and efficacy of abortion drugs. D.C.Dkt. 1 at ¶ 65 n.26 and 27.

Regardless, even if AG Platkin had a legitimate basis to investigate, his discriminatory purpose would be clear from the unreasonable scope of his demands. *Fed. Trade Comm'n v. Am. Tobacco Co.*, 264 U.S. 298, 306 (1924). If First Choice's decision to maintain multiple websites and its choice to closely mirror the FDA's statements are the purported problems, AG Platkin's demand for over a decade's worth of records is grossly disproportionate. His fishing expedition probes far deeper and broader than what would be expected to investigate those purported problems. AG Platkin seeks confidential information like First Choice's internal procedures, associations, and personal information about employees, volunteers, and donors. App.__Subpoena at 11–16.] But he has wholly failed to articulate how his interest in protecting consumers justifies an investigation into all these sensitive matters. In short, AG Platkin's unreasonable treatment

of First Choice and his dissimilar treatment of similarly situated entities demonstrates that he is engaged in viewpoint discrimination.

### 2. First Choice is likely to prevail on its Fourth Amendment claims.

AG Platkin's demands also violate the Fourth Amendment, which "requires that [a] subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *See v. City of Seattle*, 387 U.S. 541, 544 (1967). "The relevance of the sought-after information is measured against the general purposes of the agency's investigation, 'which necessarily presupposes an inquiry into the permissible range of investigation under the statute.'" *In re McVane*, 44 F.3d 1127, 1135–36 (2d Cir. 1995) (quoting *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resol. Tr. Corp.*, 5 F.3d 1508, 1516 (D.C. Cir. 1993)). A subpoena is enforceable only if "(1) the subpoena is within the statutory authority of the agency; (2) the information sought is reasonably relevant to the inquiry; and (3) the demand is not unreasonably broad or burdensome." *United States v. Westinghouse Elec. Corp.*, 788 F.2d 164, 166 (3d Cir. 1986); *see also Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984). Further, enforcement "constitutes an abuse of the court's process" if it "is issued for an improper purpose, such as harassment." *Westinghouse*, 788 F.2d at 166. AG Platkin's Subpoena abuses his authority under state law and exceeds the limits of the Fourth Amendment in three ways.

*First*, the Subpoena is not within AG Platkin's authority. The NJCFA does not provide AG Platkin with investigative authority, since it explicitly exempts nonprofit entities like First Choice. N.J.S.A. 56:8–47. Further, AG Platkin has cited no unlawful practice engaged in by First Choice that he may investigate under his Professions and Occupations authority.

*Second*, most of the materials requested by the Subpoena do not relate to the subject of the investigation. The Subpoena demands scores of documents with no conceivable relation to misleading statements to consumers or patients, charity registration, or occupational licensing. Those unrelated demands seek all documents about *any* "complaints" or "concerns" from Clients or Donors; *any* legal action or proceeding in any jurisdiction over the First Choice's services; the technology it uses; the identities of medical providers to whom it makes referrals, as well as employees, volunteers, business affiliates, owners, officers, directors, partners, shareholders, and board members; internal employee hand-books and policies; materials provided by pro-life partners; documents about the its tax-exempt status; all documents "physically or electroni-cally provided to Clients"; all "videos shown to Clients … in the course of providing [the] Services … [i]ncluding but not limited to those videos Concerning abortion procedures and their purported effects"; and all documents about "representations made … to Clients about the

confidentiality of Client information, including privacy policies."
D.C.Dkt. 5-9 "Document Requests" ¶¶ 5, 10, 11, 16, 18, 22, 23, 26.

*Third*, for many of the same reasons, the Subpoena is overbroad and burdensome. For one, it seeks discovery over a ten-year period when the statute of limitations is only six years. And to collect and produce documents having no relation to a legitimate investigation would require up to a month of work by multiple personnel at First Choice. D.C.Dkt. 1 ¶ 72. That would be harmful enough for a small business, but it would cripple the operations of a small nonprofit like First Choice. AG Platkin cannot use his investigative authority outside its proper bounds to impose such burdens that would impair the mission of an organization with which he disagrees.

## B. Irreparable harm to First Choice vastly outweighs delay for AG Platkin.

The irreparable harm to First Choice's First and Fourth Amendment rights eclipses any supposed harm asserted by AG Platkin, none of which is irreparable. On one side of the scale, First Choice suffers irreparable injury from the chilling of its protected speech and other First Amendment rights and from the unreasonable seizure of its property without any basis in law. *See* Add.030–.031. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion).

Similarly, "an inspection violating the Fourth Amendment would constitute irreparable injury for which injunctive relief would be appropriate." *Cerro Metal Prod. v. Marshall*, 620 F.2d 964, 974 (3d Cir. 1980). This Court has recognized that "a company has a privacy interest in its place of employment," and "an unauthorized government invasion of that place[,] whether that invasion violates a statute or the Constitution[,] is an injury. *Id.* at 974. Unwarranted investigations "necessarily create inconvenience to the employer and a certain amount of lost time for employees who [are] disrupted in their work," and are harmful "[e]ven if no violations were found and no citations issued." *Id.*

Plus, without an injunction, First Choice will lose its right to have its federal constitutional claims heard in a federal forum, which "is a choice [that] cannot be properly denied." *Grode v. Mut. Fire, Marine & Inland Ins. Co.,* 8 F.3d 953, 958 (3d Cir. 1993). If the state-court enforcement action proceeds to judgment, it will likely preclude First Choice's federal claims. Plus, the fact that First Choice will "be forced to litigate the same issues on multiple fronts at the same time" adds an additional layer of irreparable harm. *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1363 (Fed. Cir. 2011). The added, unnecessary burden of "similar 'duplicative' litigation"—particularly for a resource-constrained nonprofit, Add.030—is irreparable. *Carlough v. Amchem Prod., Inc.*, 10 F.3d 189, 196 (3d Cir. 1993); *see also Roth v. Bank of the Commonwealth*, 583 F.2d 527, 531 (6th Cir. 1978) (listing "numerous

other difficulties that are not remediable by money damages" if the plaintiffs were compelled to simultaneously litigate the same matters in multiple courts); *Woodlawn Cemetery v. Loc. 365, Cemetery Workers & Greens Attendants Union*, 930 F.2d 154, 157 (2d Cir. 1991) (citing the harms, including cost, that befall a party forced to relitigate multiple adversarial proceedings).

In contrast to the concrete harms facing First Choice, there is no harm to AG Platkin or to the public interest from entering a TRO. A short delay in AG Platkin's investigation of conduct in which First Choice has openly engaged for nearly forty years is not an irreparable harm. *See Smith & Wesson*, 27 F.4th at 896 (Matey, J. concurring) (expressing skepticism where AG Platkin's "long-dormant regulatory powers [have] suddenly [sprung] forth to address circumstances that have not changed"). Indeed, AG Platkin faces no legitimate hardship in being slightly delayed in his fishing expedition into First Choice's records and activities.

First Choice, however, faces very real hardship. It must choose between risking sanctions, on one hand, and submitting to discriminatory and burdensome demands for sensitive information on the other. To submit to AG Platkin's demand would be to alienate directors, employees, donors, volunteers, associates, and commercial vendors, while wasting the ministry's limited resources.

The public interest likewise tilts in favor of granting a temporary restraining. First Choice has alleged the violation of several constitutional rights, and it is "always in the public interest to prevent the violation of a party's constitutional rights." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citation omitted). *Accord Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019) ("[T]he public interest is served when constitutional rights are protected."). All the TRO factors support First Choice, and the district court erred in refusing to issue that relief.

## CONCLUSION

The Court should reverse the district court's order dismissing this case and denying a TRO and direct the entry of the requested TRO.

Dated: April 22, 2024      Respectfully submitted,

*/s/ Lincoln Davis Wilson*
Erin M. Hawley
Lincoln Davis Wilson
Timothy A. Garrison
Gabriella M. McIntyre
Alliance Defending Freedom
440 First Street, NW, Suite 600
Washington, DC 20001
(202) 393-8690
ehawley@ADFlegal.org
lwilson@ADFlegal.org
tgarrison@ADFlegal.org
gmcintyre@adflegal.org

Counsel for Plaintiff-Appellant First Choice
Women's Resources, Inc.

## CERTIFICATE OF COMPLIANCE

This brief complies with FRAP 27 and 32 because it contains 10,023 words, excluding parts exempted by Fed. R. App. P. 27(a)(2)(B) and 32(f).

This brief complies with Fed. R. App. P. 32(a)5) and 32(a)(6) because it has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

*/s/ Lincoln Davis Wilson*

Counsel for Plaintiff-Appellant First Choice Women's Resources, Inc.

April 22, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2024, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

/s/Lincoln Davis Wilson
Counsel for Plaintiff-Appellant First
Choice Women's Resources, Inc.

April 22, 2024